KTC:TH

**M-06- 335**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

3:06-MC-00011-JWS

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

**File Under Seal**

- against -

EHSANUL ISLAM SADEQUEE,

Defendant.

AFFIDAVIT IN SUPPORT
OF ARREST WARRANT
(Title 18, United States
 Code, Section 1001)

- - - - - - - - - - - - - - - - -X

      Michael Scherck, being duly sworn, deposes and says,
that he is a Special Agent with the Federal Bureau of
Investigation ("FBI"), being appointed according to law and
acting as such.

      On or about August 18, 2005, within the Eastern
District of New York, the defendant EHSANUL ISLAM SADEQUEE, in a
matter within the jurisdiction of the executive branch of the
Government of the United States, did knowingly and willfully make
a materially false, fictitious and fraudulent statement and
misrepresentation, in violation of Section 1001(a)(2) of Title 18
of the United States Code.

      (Title 18, United States Code, Section 1001).

      The source of my information and the grounds for my
belief are as follows:

1.    I am a Special Agent with the Federal Bureau of Investigation (FBI), assigned to the Joint Terrorism Task Force (JTTF) in the Atlanta Division Field Office.  I have been employed as a Special Agent with the FBI since June 1, 2004.  I have eight years' prior law enforcement experience.  My duties are to investigate violations of federal law, including acts of terrorism and related criminal offenses.

2.    This affidavit sets forth the evidence that I believe provides sufficient probable cause for the issuance of a warrant for the arrest of EHSANUL ISLAM SADEQUEE for violating 18 USC § 1001, False Statements to Law Enforcement.  The information provided below is based upon my personal and direct knowledge as well as upon information conveyed to me by other law enforcement and government officials and my review of records, documents, interview reports, and other materials.  The evidence presented in this affidavit is what I believe necessary for establishing probable cause; the affidavit does not include all the information gathered in this investigation.

**OVERVIEW**

3.    Ehsanul Islam SADEQUEE is a United States citizen of Bangladeshi descent.  He was born on July 30, 1986, in Fairfax, Virginia.  He lived with his mother, brother and sister in Roswell, Georgia.  He attended high school in Canada and has not attended college.  In August of last year, SADEQUEE traveled to Bangladesh, ostensibly to get married.  He has not yet

returned and is believed to have remained in Bangladesh.
SADEQUEE has been the subject of a JTTF investigation for several
months.

   4.   Syed Haris AHMED is a naturalized American
citizen.  He was born in Pakistan on December 9, 1984, and moved
to the United States when he was about 12 years old.  He still
has family in Pakistan.  He possesses both a Pakistani and a US
passport.  His parents and siblings reside in Dawsonville,
Georgia.  AHMED stays with his parents often, but his primary
residence is a house in downtown Atlanta.  He attends the Georgia
Institute of Technology and currently works at a Muslim perfumery
in Smyrna, Georgia.

   5.   On March 23, 2006, a federal grand jury in the
Northern District of Georgia indicted AHMED for material support
of terrorism (18 USC § 2339A).

   6.   In March of 2005, SADEQUEE and AHMED traveled to
Canada together via Greyhound bus.  While there, they met with
several other targets of an ongoing JTTF investigation.  The two
stayed in Canada for several days.  SADEQUEE, when subsequently
interviewed by JTTF agents about this trip, lied twice about the
joint travel, telling the agents (1) that he traveled alone and
(2) that he stayed with his aunt while there.  These false
statements form the basis for this application for a criminal
complaint.

4

**THE CHRONOLOGY**

**I. INTERVIEW OF SADEQUEE**

7.    On August 18, 2005, two JTTF agents consensually
interviewed SADEQUEE at JFK Airport in New York, just prior to the
departure of SADEQUEE's outbound flight to Bangladesh.    The
purposes of the interview were to determine where in Bangladesh
(and perhaps beyond) he was traveling, his prior foreign travel,
his associates and contacts, and other issues relevant to his trip
and this investigation.    During the interview, SADEQUEE stated that
he was going to Bangladesh to get married and that he would be
there for up to nine months, in order to obtain a visa for his new
wife so that she could return with him to the United States.

8.    When asked about other, earlier foreign travel,
SADEQUEE explained that he had traveled to Canada via Greyhound
bus in January 2005 (the wrong date).    He claimed that while in
Canada, he had stayed with his aunt in Toronto.    The only name
SADEQUEE would provide for his aunt was "Manju Auntie"; he said
he did not know the name of her husband.    Finally, SADEQUEE
stated that he traveled to Canada alone.

9.    As part of their investigation into SADEQUEE's
travels, federal agents also conducted a routine outbound search
of SADEQUEE'S checked luggage.    Agents found, concealed in the
lining of SADEQUEE's lone suitcase, two CD-ROMs.    One CD
contained encrypted files that FBI technical experts remain
unable to decode.    The other CD contained an apparent bootleg
copy of a hard-core pornographic film.    Concealed along with the

CDs was a Fairfax County Visitors' Center map of the Washington, D.C., and Alexandria, Virginia, areas.

## II. FIRST INTERVIEW OF AHMED

10.  The day after SADEQUEE was interviewed and then departed for Bangladesh, AHMED returned from a month's trip to Pakistan. He arrived at Hartsfield-Jackson International Airport in Atlanta on August 19, where he was interviewed by federal agents. AHMED stated that his purpose for traveling to Pakistan was two-fold: to visit family and to seek Islamic schooling. He claimed to have stayed with relatives while he was in Pakistan.

11.  When questioned about other foreign travel, AHMED explained that he had visited Toronto during March of 2005 (the correct date). He stated that the purpose of the Canada trip was to visit friends and family. AHMED added that he traveled to Canada with his friend, "Shifa" Sadequee. ("Shifa" is the nickname SADEQUEE provided for himself in his interview the day before.) AHMED said that he had met SADEQUEE at a mosque in Atlanta. According to AHMED, when he and SADEQUEE were in Canada, they stayed with a friend, and not with SADEQUEE's aunt.

## III. RECORDS-BASED INVESTIGATION

12.  FBI agents, following up on the discrepancies between SADEQUEE and AHMED's versions of events concerning the Canada trip, acquired several documents that demonstrated that SADEQUEE had lied when he said he traveled alone.

13.  First, records obtained from Greyhound showed two tickets, sharing the same confirmation number, being issued to

SADEQUEE and AHMED, for travel from Atlanta to Toronto on March 6, 2005, with a return to Atlanta scheduled for March 13, 2005. Second, bank records indicated a $280 debit, dated February 26, 2005, from SADEQUEE's account for the purchase of two Greyhound tickets. Finally, Immigration and Customs Enforcement (ICE) records placed SADEQUEE and AHMED crossing the border from Canada back into the United States only moments apart on March 12, 2005.

## IV.   FOLLOW-UP INTERVIEWS WITH AHMED

14.   AHMED, in a series of interviews in March 2006, provided a fuller picture of the March 2005 trip to Canada. First, he acknowledged that the purpose of the trip was for SADEQUEE and AHMED to meet with like-minded Islamic extremists. According to AHMED, while he and SADEQUEE were in Canada, they met regularly with at least three subjects of an FBI international terrorism investigation. AHMED further explained that, during some of these meetings, he, SADEQUEE, and the others discussed strategic locations in the United States suitable for a terrorist strike, to include oil refineries and military bases. They also plotted how to disable the Global Positioning System in an effort to disrupt military and commercial communications and traffic. Finally, the assembled group developed a plan for traveling to Pakistan where they would attempt to receive military training at one of the several terrorist-sponsored camps. (AHMED later traveled to Pakistan in an attempt to receive just such training.)

7

15. During these interviews, AHMED repeatedly confirmed that he and SADEQUEE traveled together.[1]  Moreover, AHMED reinforced the point that he and SADEQUEE did not stay with SADEQUEE's aunt; rather, they stayed with an individual with whom they were conspiring concerning the travel to terrorist camps and the plots against civilian and military installations in the United States.

**MATERIALITY**

16. The recent interviews with AHMED demonstrate that the trip to Canada was for terrorism-related planning and coordination. SADEQUEE, rather than choosing to remain silent, lied to federal agents about two material aspects of his trip to Canada: who his traveling companion was and where they stayed. Both of these facts, had they not been untruthfully withheld, would have assisted the Government in its ongoing terrorism investigation.

**CONCLUSION**

17. I submit that the above information establishes probable cause to believe that Ehsanul Islam SADEQUEE has committed a violation of 18 U.S.C. § 1001, in that he has made materially false statements in connection with an ongoing federal terrorism investigation, a matter within the jurisdiction of the

---

[1]  SADEQUEE's sister has also confirmed that he traveled to Canada with AHMED. In November, 2005, SADEQUEE's sister spoke with AHMED and, during the course of the conversation, which was monitored by court-authorized electronic surveillance, stated "Shifa is traveling back and forth.  You guys visited Toronto together."

8

executive branch of the Government of the United States.

18.   Because of the nature and content of this
Affidavit, we respectfully request that Affidavit, and Arrest
Warrant in this matter shall be sealed until further Order of
this Court, except that said documents may be disclosed by the
United States to other United States and foreign law enforcement
officials, including Interpol officials, judges, and other
persons to the extent necessary to pursue the arrest, capture,
and transfer to the United States of the defendant in this
matter.

WHEREFORE, your deponent respectfully requests that the
defendant be dealt with according to law.

*Michael Scherck*

MICHAEL SCHERCK
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me this
28th day of March, 2006

# REDACTED SIGNATURE

THE HONORABLE JOAN AZRACK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK